The relief described hereinbelow is SO ORDERED.

Signed March 19, 2008.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

**In re:**

**DENNIS R. PANGBORN,**            Case No. 05-25045
    **Debtor.**                         Chapter 7

---

**SIDNEY RHOADES,**
    **Plaintiff,**

    **v.**                                Adv. No. 05-6237

**DENNIS R. PANGBORN,**
    **Defendant.**

---

### MEMORANDUM OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

Defendant's Motion for Summary Judgment is before the Court.[1] Plaintiff Sidney Rhoades seeks to except from discharge under 11 U.S.C. §523(a)(6) damages he claims Debtor caused in attempting to restore Plaintiff's home.

---

[1] Doc. No. 20. Plaintiff Sidney Rhoades appears by Kenneth C. Jones. Defendant/Debtor Dennis R. Pangborn appears by Hugh L. Marshall.

08.03.19 Rhoades v Pangborn SJ.wpd

**Findings of Fact**

Debtor filed for bankruptcy as an individual on September 30, 2005. Debtor was also the president, sole shareholder, and sole director of a Missouri corporation called Paul Davis Restoration of Northland, Inc. ("PDR"). PDR is not a debtor.

In September 1999, Plaintiff and PDR entered into a contract for the restoration of Plaintiff's home which had been damaged by fire. The original estimate was $95,234.50. PDR subsequently submitted estimates for additional work or changes requested by Plaintiff, bringing the total job estimate to $119,013.91. Pursuant to the contract, Plaintiff agreed to pay PDR 50 percent to start the project, 20 percent after demolition, 20 percent after painting and finish work, and 10 percent upon completion. At the beginning of the job, Plaintiff's insurer issued two checks payable to Plaintiff, his wife, and PDR. Plaintiff and his wife endorsed the first check for $46,617.25 over to PDR at the beginning of work. Plaintiff and his wife later cashed the second check for $39,871.30 and paid PDR $20,000.00 for work performed. Plaintiff and PDR deposited the remaining $19,871.30 in a newly created PDR bank account. The account belonged to PDR, but Plaintiff could also withdraw funds as an authorized signatory. Only one signature was required for withdrawals. Plaintiff maintains Debtor promised to withdraw funds for the construction only upon Plaintiff's prior approval. In June 2000, PDR withdrew $19,500.00 from the bank account for work performed. Plaintiff maintains the withdrawal was without his knowledge or approval. Even so, the parties agree PDR received $86,117.25 toward the contract price by the time the parties terminated the agreement.

The project did not proceed smoothly. Plaintiff complained about construction delays and poor workmanship. By September 2000, the parties' business relationship had disintegrated.

On September 18, 2000, PDR generated an invoice for $119,013.91 and deducted credits of $86,117.25 for payments received and $24,697.48 for work not performed, which left a total due from Plaintiff of $8,199.18. Plaintiff closed the PDR bank account in November 2000 and withdrew the remaining $376.14. Plaintiff never paid the balance due on the invoice, and on January 8, 2004, he filed a state court petition against PDR and Debtor personally for breach of contract, violation of Missouri's Merchandising Practices Act, deceptive or unfair business practices, and conversion. The state court action was pending when the Debtor filed bankruptcy. Plaintiff filed this Complaint to determine the dischargeability of his claims.

Plaintiff's allegations of Debtor's tortious conduct are: (1) Debtor unilaterally terminated the parties' contract; (2) Debtor insisted as a condition of Debtor's continuing to work on Plaintiff's home that Plaintiff's insurance advances be held in a PDR bank account; and (3) Debtor subsequently withdrew the insurance proceeds from the PDR bank account without Plaintiff's prior approval.

## Conclusions of Law

A.  **Summary Judgment Standard.**

Summary judgment is appropriate if the moving party demonstrates there is no genuine issue as to any material fact, and he is entitled to judgment as a matter of law.[2] A movant who does not bear the ultimate burden of persuasion at trial must demonstrate to the court a lack of evidence from the other party on an essential element of that party's claim.[3] If the movant meets this burden, the nonmovant who would bear the burden of persuasion at trial must go beyond the

---

[2] Fed. R. Bankr. P. 7056.
[3] *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

pleadings and set forth specific facts which would allow the court to find for the nonmovant.[4]

## B. Plaintiff's Breach of Contract Claims Are Not Excepted from Discharge under §523(a)(6).

A discharge in bankruptcy does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.[5] Thus, a person who commits an intentional tort will not be absolved of liability through a discharge in bankruptcy.[6] A creditor must prove by the preponderance of the evidence that the debt should be excepted from discharge.[7] Section 523(a)(6) exceptions to discharge are construed against the creditor. The willful and malicious standard is stringent, and debts arising from recklessness or negligence do not qualify.[8] A knowing breach of contract does not qualify as an intentional tort under §523(a)(6).[9] After *Geiger*, the creditor must show more than the debtor's intentional acts caused him injury; the creditor must show the debtor intended to cause the injury through his actions. In order for a debt to be nondischargeable under §523(a)(6), the plaintiff must prove: (1) the debtor intended to and caused an injury to the plaintiff's property interest; (2) debtor's actions were willful; and (3) debtor's actions were malicious.[10] Conversion of money is proven by showing (1) a fund belonging to plaintiff; (2) placed in the defendant's custody for a particular purpose; and (3) the defendant's misappropriation for a different purpose.[11]

---

[4] *Id., citing* Fed. R. Civ. P. 56(e).
[5] 11 U.S.C. §523(a)(6).
[6] *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1128 (10th Cir. 2004).
[7] Fed. R. Bankr. P. 4005; *Grogan v. Garner,* 498 U.S. 279 (1991); *In re Graham,* 973 F.2d 1089, 1098-1102 (3rd Cir. 1992).
[8] *Kawaauhau v. Geiger,* 523 U.S. 57, 64 (1998).
[9] *Panalis v. Moore,* 357 F.3d at 1128, *citing Geiger,* 523 U.S. at 62.
[10] *In re Basel-Johnson,* 366 B.R. 831, 849 (Bankr. N.D. Ill. 2007).
[11] *Boyd v. Wimes,* 664 S.W.2d 596, 598-99 (Mo. Ct. App. 1984).

-4-

In this case, Plaintiff has not provided evidence of intent on the part of Debtor to support a finding of willful and malicious injury. The evidence shows Debtor, through his company PDR, undertook to repair the home. Although the work was slowly done and did not meet Plaintiff's expectations, there is no evidence of a course of conduct showing an intent to harm Plaintiff. At most, the evidence shows a breach of contract by PDR to complete the repair and restoration of the house according to Plaintiff's direction. Damages for breach of a repair contract is not an exception to discharge under §523(a)(6).[12]

Plaintiff does not present any evidence of conversion. Plaintiff argues Debtor removed $19,500.00 from PDR's bank account. However, Debtor's invoice applied the $19,500.00 to the contract price. Plaintiff himself included the $19,500.00 in the amount paid to repair his home. Debtor paid all laborers and subcontractors on Plaintiff's home. No mechanic's liens where filed against Plaintiff's home. Plaintiff presents no evidence the $19,500.00 was used for any other purpose than the purpose for which it was intended - to be applied toward repairs made to the home. Again, the fact Plaintiff was dissatisfied with the work is a contract claim, not a conversion claim. The fact Debtor did not first seek Plaintiff's approval to apply the funds toward the invoice may be another breach of contract, but not an act of conversion. The facts establish at most that Debtor, through his company, simply failed to fulfill his contractual obligations. Under §523(a)(6), failure to abide by contractual obligations is not sufficient to

---

[12] *See, e.g., In re Casini,* 307 B.R. 800 (Bankr. D.N.J. 2004) (breach of contract claim against debtor for debtor's company's failure to repair plaintiff's boat is not excepted from discharge); *Nat'l Ass'n of System Administrators, Inc. v. Avionics Solutions, Inc.,* 2008 WL 140773 (S.D. Ind. 2008) (debtor's company breached repair contract, but debtor's resulting personal liability discharged in bankruptcy); *In re Radcliffe,* 317 B.R. 581, 589 (Bankr. D. Conn. 2004) (claim for repayment of down payment for home is breach of contract claim, not one for conversion, and is dischargeable); *In re Huggins,* 252 B.R. 567, 569 (Bankr. M.D.Fla. 2000) (claims for breach of lease which allegedly caused damage to plaintiff's property was a breach of contract claim and fell far short of the standards required by §523(a)(6)).

sustain an exception to discharge.

## Conclusion

Plaintiff has failed to show any genuine issues of material fact. Debtor has established Plaintiff lacks evidence of essential elements of Plaintiff's claim. Plaintiff has not carried his burden to set forth specific facts which would allow the Court to find for Plaintiff. Plaintiff's claim against Debtor is not excepted from discharge under §523(a)(6). Debtor is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED Defendant's motion for summary judgment is GRANTED. A separate order of judgment in Debtor/Defendant's favor will be entered.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

08.03.19 Rhoades v Pangborn SJ.wpd